NEBRASKA CENTRAL BUILDING & LOAN ASSOCIATION, APPELLEE, V. YELLOWSTONE, INC., ET AL., APPELLEES: STATE OF NEBRASKA, APPELLANT.

4 N. W. (2d) 762

FILED JULY 3, 1942. No. 31177.

*Walter R. Johnson, Attorney General,* and *Robert A. Nelson,* for appellant.

*Field, Ricketts & Ricketts, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This cause is now before us on motion for rehearing. The opinion heretofore adopted is reported in 140 Neb. 422, 299 N. W. 474, reference to which is made for a statement of the issues and facts involved.

In construing statutes this court must first determine whether the legislation is prohibited by the Constitution, and must then determine the intention of the legislature. The constitutionality of the controlling enactments is not here challenged, so we are concerned only in ascertaining the legislative intent. *Updike v. City of Omaha,* 87 Neb. 228, 127 N. W. 229.

The basic contention of the appellant's motion for rehearing is that to secure a valid dissolution of a corporation in default for payment of its occupation tax imposed by section 24-1703, Comp. St. 1929, a judicial proceeding instituted by the attorney general on request of the secretary of state, as provided by section 24-1717, Comp. St. 1929, is necessary.

This legislation was originally enacted in 1913. It formed chapter 240 of the session laws of that year, which was entitled "An Act to require corporations to file annual reports with the secretary of state and to pay annual fees therefor," and to repeal certain sections enumerated. It contained 25 sections exclusive of the repealing clause. This act so passed remained in full force and effect, so far as the transactions involved in this suit are concerned, save and except section 6 (Comp. St. 1929, sec. 24-1706) which was amended in

1933 (Laws 1933, ch. 32) and in 1935 (Laws 1935, ch. 47), and sections 22 and 23 (Comp. St. 1929, secs. 24-1722, 24 1723) which were amended in 1921 (Laws 1921, ch. 173).

With the provisions of section 6 of this original act we have no concern, and it will not be further referred to. But it is otherwise with sections 22 and 23.

As originally enacted in 1913, section 17 (Comp. St. 1929, sec. 24-1717), embraced the only power or authority to forfeit or annul the charter of a defaulting corporation for profit, for failure to pay the occupation tax imposed by the terms of the act. The remedy provided was "an action in the district court of Lancaster county, or any county in this state in which such corporation is located," to be brought by the attorney general, on the request of the secretary of state, and then only if "such default is wilful and intentional."

However, in 1921, sections 22 and 23 of this 1913 act were amended by chapter 173, Laws 1921. This act was entitled "An Act to amend sections 782 and 783, Revised Statutes of Nebraska for 1913, in relation to the dissolution of domestic corporations by the secretary of state, and to the forfeiture of the right of a foreign corporation to do business in Nebraska and making delinquent occupation taxes a lien upon the assets of the corporation, and to repeal said original sections 782 and 783, Revised Statutes of Nebraska for 1913." It added to section 22 (Comp. St. 1929, sec. 24-1722), as previously existing, by amendment the words:

"Upon the failure of any domestic corporation to pay occupation tax within one year after it becomes due, the secretary of state shall send by registered mail a letter correctly addressed to the last named address of the corporation, which letter shall contain a notice of the occupation tax which is due, and a declaration bearing the great seal of the state of Nebraska, stating that if the delinquent occupation tax is not paid within ninety days after the mailing of the letter the corporation will be dissolved according to law; and that if the delinquent occupation tax is not paid within ninety days after the mailing of the registered letter the de-

linquent occupation tax shall be a lien upon the assets of the corporation, subsequent only to state, county and municipal taxes. Upon the failure of any domestic corporation to pay its occupation tax within ninety days after the mailing of the registered letter correctly addressed to the last known address of the corporation, the secretary of state shall dissolve the corporation and make such entry and showing upon the records of his office. Upon the failure of any domestic corporation to pay its occupation tax within ninety days after the mailing of the registered letter correctly addressed to the last known address of the corporation, all delinquent occupation taxes of the corporation shall be a lien upon the assets of the corporation, subsequent only to state, county and municipal taxes." (Laws 1921, ch. 173).

And, similarly, the 1921 act added to section 23 (Comp. St. 1929, sec. 24-1723), as previously existing, the provision that, in the event of foreign corporations defaulting in a similar manner, by complying with similar procedure prescribed, "The secretary of state shall bar the corporation from doing business in the state of Nebraska under the corporation laws of the state and make such entry and showing upon the record." (Laws 1921, ch. 173).

It will be noted that, while the act of 1921 was amendatory in its nature, its title was broadened and made explicit by the words embraced therein: "An Act * * * in relation to the dissolution of domestic corporations by the secretary of state," etc.

The title to a legislative act is a part thereof. *Wayne County v. Steele*, 121 Neb. 438, 237 N. W. 288. And where the title to the amendatory act sufficiently indicates the nature of the legislation in it contained or the nature of the changes or additions by it made, it is immaterial whether or not the provisions of the act are covered by the title of the act amended. *Miller v. Iowa-Nebraska Light & Power Co.*, 129 Neb. 757, 262 N. W. 855.

From this principle of construction it follows that, in determining its legal effect, resort may be had to the title of this amendatory act of 1921 as a part thereof to discover

the legislative intent therein expressed. *State v. City of Lincoln*, 101 Neb. 57, 162 N. W. 138.

And again, "In order to determine the meaning of the language of an act of the legislature, it is proper to examine the course of legislation upon the same general subject, and to consider in what connection and with what context it has theretofore been employed." *State v. Cosgrave*, 85 Neb. 187, 122 N. W. 885.

When chapter 240 of the Laws of 1913 was adopted, section 555 of the Revised Statutes of 1913 (later Comp. St. 1929, sec. 24-107), pertaining to "Affairs of dissolved corporations—how settled," "upon the dissolution, by the expiration of the term of its charter, *or otherwise*," was and still remains in full force and effect. Its operation was necessarily connected with article 17, ch. 24, Comp. St. 1929, entitled "Occupation Tax," and particularly with section 24-1717 thereof relative to revocation and annulment of the charter of corporations organized for profit at the suit of the attorney general. Thereafter until the adoption of the act of 1921 the whole power to forfeit and annul charters for nonpayment of occupation taxes was exercisable by the attorney general "on request of the secretary of state." In the instant proceeding the attorney general insists that not only does this power continue, but that it remains exclusive in its nature. But the fact that the amendment of 1921 was adopted by the legislature certainly indicates a legislative intent that a "change" in the law should be thereby effected. For, had no change been legislatively intended, no amendment would have been enacted. The fact that the laws existing prior to 1921 vested the attorney general with the only existing power to prosecute an action to forfeit and annul the charter of a corporation organized for profit defaulting in payment of its occupation tax, wherein such default was wilful and intentional, and revoking its charter upon the establishment of such allegations, is neither an express or implied denial of the right of future legislatures to vest such power in other officials, or to broaden the base upon which such forfeitures of charters might be sustained, or to

provide a different procedure to secure the same. When the act of 1921 was enacted the legislature of 1921 must be presumed to have had in mind all previous legislation upon the subject, so that in the construction of this statute we must consider the preexisting law and any other acts relating to the same subject-matter. *Nebraska District of Evangelical Lutheran Synod v. McKelvie,* 104 Neb. 93, 175 N. W. 531; *Chicago & N. W. R. Co. v. Bauman,* 132 Neb. 67, 271 N. W. 256.

So considered, it is obvious that the amendatory act of 1921 was by the legislators necessarily connected with section 555, Rev. St. 1913 (Comp. St. 1929, sec. 24-107) as an appropriate means and method of completing or supplementing the executive action revoking the charter of the corporation involved, authorized thereby. It must be conceded that section 555, Rev. St. 1913, was by its terms equally applicable to and connected with both enactments now being considered. The necessary effect of the act of 1921, construed in the light of the foregoing principles, was (1) to create a new method of dissolving a corporation organized for profit; (2) to vest the power for that purpose in the secretary of state alone; (3) to establish as the essential basis of such action of the secretary of state "the failure of any domestic corporation to pay its occupation tax" within the time prescribed by law. This new power thus conferred was definite, certain and complete. It in no manner affected, nor was it in turn in any manner affected by, the powers created and vested by section 24-1717, Comp. St. 1929. Both provisions continued in full force and effect. The use of one or the other was merely an option to be exercised by the secretary of state. Indeed, if they were to be regarded as conflicting in any manner or to any degree, the act of 1921 as the last word of the legislators will control. Now, whether the dissolution of a corporation be accomplished by and pursuant to section 24-1717, Comp. St. 1929 (a judicial proceeding instituted by the attorney general at the request of the secretary of state) or under section 24-1722, Comp. St. 1929 (by the secretary of state on his own motion as an ex-

ecutive officer), both are properly authorized, and if carried out with due compliance with the statutory provisions applicable to each result in the "dissolution" of the corporate body to which applied, and the complete revocation of its charter. It then becomes subject to the application of the provisions of section 24-107, Comp. St. 1929 (then unrepealed) under the conditions therein enumerated and set forth.

It follows that the motion for a rehearing should be, and is hereby, overruled, and the former opinion of this court is adhered to.

AFFIRMED.