438

WAYNE COUNTY, APPELLEE, V. J. J. STEELE, APPELLANT.

FILED JUNE 19, 1931.  No. 27704.

*William C. Dorsey, Montgomery, Hall, Young & Johnsen* and *Harry E. Siman,* for appellant.

*C. H. Hendrickson* and *H. D. Addison, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

In this case Wayne county seeks to recover from the defendant Steele, county treasurer of Wayne county, in an action at law upon two causes of action, viz.: On the first the sum of $660 for automobile license and registration fees earned and received between July 1, 1925, and July 1, 1928, inclusive, but retained by defendant and not accounted for by him; and upon the second cause of action the sum of $3,920 unlawfully paid by defendant as county treasurer, out of public funds in his possession, to Grace Steele, his sister, employed by him in the office of the county treasurer of Wayne county as a clerk and helper during the years 1925 to 1928, inclusive, all alleged to be in violation of sections 84-811 and 84-812, Comp. St. 1929. In the district court there was judgment on the pleadings for the plaintiff in the sum of $767.63 upon the first cause of action; and for the sum of $850.35 on the second cause of action. Defendant appeals. Plaintiff prosecutes a cross-appeal as to denial in part by the district court of its second cause of action.

As to the first cause of action, the controlling statutory provisions are sections 39-1405 and 60-325, Comp. St. 1929. The literal terms contained in these provisions plainly require the affirmance of the judgment of the district court upon the first cause of action. However, appellant insists that section 39-1405, which in its present form finds its source in chapter 158, Laws 1925, approved March 28, 1925, is invalid as having been passed in contravention of section 14, art. III of the Constitution.

Prior to the adoption of the amendment of 1925 by the legislature of that year, the matter under consideration was regulated by the following statutory provisions: Section 8379, Comp. St. 1922, which provided: "The following fee shall be paid upon the registration of each motor vehicle, in accordance with the provisions of this act," and thereafter sets forth the specific amount assessed against each class of vehicles. Section 8380, Comp. St. 1922, pro-

vided: "All registration fees provided for in this article shall be paid to the county treasurer of the county in which the applicant for registration resides, said fees shall be placed in a fund to be known as the highway fund and such treasurer shall dispose thereof as may be provided by law." Section 8337, Comp. St. 1922, provided: "The county treasurer shall transmit to the state treasurer three and one-half ($3\frac{1}{2}\%$) per cent. of all of the highway fund collected by him, said three and one-half ($3\frac{1}{2}\%$) per cent. shall be credited to the general fund and when appropriated shall be used by the department of public works to pay for the cost of administration of the motor vehicle law and the supervision of the maintenance of state highways: Provided, however, that when any of the clerical work that is being done by the department of public works in the administration of the motor vehicle law is transferred to the county treasurer's office of any county in the state, the department is hereby empowered to pay the county treasurer's office of such county an amount of money equal to the reduction of the expenses in said department by such transfer, provided, further, that any such money so paid shall be credited to the general fund of such county." Section 8389, Comp. St. 1922, provided: "The department of public works shall designate and appoint the treasurers of the various counties to be agents of the said department in such counties, for the purpose of registering motor vehicles, and for the granting of licenses to applicants, subject to the requirements of this article, and in accordance with such rules and regulations as shall be imposed by the department of public works."

It will thus be seen that the only sections providing for the disposition and remittance of the "highway fund" after the same has been collected, are sections 8337 and 8380, Comp. St. 1922. Section 8337 also provided, under conditions specified, for the payment to the county treasurer's office of certain compensation for work done and

services rendered by that governmental agency in the administration of the motor vehicle law, which was to be credited to the general fund of the county.

Chapter 158, Laws 1925, the amendatory act attacked by the appellant as unconstitutional, carried as its title, not only the usual provisions, viz., "An act to amend sections * * * 8337 * * * Compiled Statutes of Nebraska for 1922, relating to state highways," but, also, there was added thereto, "providing that the county treasurer as agent for the department of public works in each county shall retain as fees for his office five cents (5¢) for each original motor vehicle registration;" and there appears in the body of this act section 2, whereby section 8337 is amended to read as follows: "The various county treasurers shall act as agents for the department of public works in the collection of all automobile registration fees. While acting as such agents, the county treasurers shall retain from the funds collected for automobile registration five cents (5¢) for each original motor vehicle registration. Said five cents (5¢) shall be accounted for as other fees passing through their hands. After five cents (5¢) per original motor vehicle registration is deducted, the county treasurers shall transmit to the state treasurer two and one-half per cent. (2½%) of all such funds collected by them."

It must be conceded that "whatever might have been originally made a part of a law may at any time be ingrafted upon it by legislation professing to be amendatory." *Richards v. State,* 65 Neb. 808. The test of the propriety of the substance of amendments is whether they are germane to the provisions sought to be amended. "Germane" is defined by Webster's New International Dictionary as "Near akin; closely allied; appropriate; relevant." By Corpus Juris, as "Alike; closely allied; pertaining to; related to." 28 C. J. 614. The latter definition has been, in part at least, approved by this court. *State v. Majors,* 85 Neb. 375, 379. The effect of the amend-

ment to section 8337 here under consideration is, first, to make express what had been theretofore implied therein, viz., that "county treasurers shall act as agents for the department of public works in the collection of all automobile registration fees;" second, instead of a conditional payment to the office of county treasurers as compensation for services rendered, to be credited to the general fund, there was substituted a payment certain to the county treasurer as compensation for work thus performed, which should "be accounted for as other fees passing through their hands;" third, the percentage to be remitted to the state treasurer of the collections thus made was slightly reduced. Every change thus effected was plainly "closely allied to," "pertaining to," or "related to" the specific provisions contained in section 8337 prior to the amendment. The amendment thus adopted, therefore, must be considered as germane to that to which it applies, and properly covered by the title of the act involved in this cause of action.

Nor is the situation in any manner affected by the provisions of section 8389, Comp. St. 1922. On March 28, 1925, when chapter 158, Laws 1925, was approved, this section was wholly unaffected by the amendment heretofore considered by us, and remained unmodified. On April 2, 1925, chapter 159, Laws 1925, was approved, by which such section 8389 was amended, and as thus amended now appears as section 60-325, Comp. St. 1929. Manifestly a subsequent amendment to an independent act may not determine the constitutionality of a like independent act previously passed and approved. However, this section bears internal evidence that it was passed with due consideration of the amendment made by chapter 158, Laws 1925, as section 8389 as amended provides: "The treasurers of the various counties * * * as provided in section 8337, Compiled Statutes of Nebraska for 1922, as amended (39-1405), shall receive five cents (5¢) for each original registration as such agent." The statute control-

ling is valid as amended, and the judgment of the district court on the first cause of action is correct.

The judgment entered in the district court on the second cause of action was based solely on sections 5074 and 5075, Comp. St. 1922. These provisions now appear as sections 84-811 and 84-812, Comp. St. 1929. The defendant challenges the validity of this legislation on a number of grounds, of which we find it necessary to discuss but two: (1) The insufficiency of the title of chapter 227, Laws 1919, the original enactment; and (2) the penal nature of the part thereof authorizing recovery against the officer making the payment to the person ineligible to appointment.

This chapter was originally introduced as House Roll 260. It carried the identical title which formed the title of chapter 227, Laws 1919, viz.: "A bill for an act declaring it unlawful to appoint to lucrative public office or position any person bearing certain relationship to the appointing officer and making such appointments null and void."

The following constituted the body of this bill at the time it was first presented for the consideration of the legislature, viz.: "Section 1. That it shall hereafter be unlawful to appoint, by virtue of authority conferred by the Constitution or the laws of this state, to any lucrative public office or position any person bearing the relationship to the officer charged with making the appointment individually or in conjunction with other officers (or to his · wife) that would entitle such person under the laws of this state to take by inheritance from said appointing officer (or his wife) in the event of intestate death; and each and every such appointment shall be null and void." It will be noted that, by the terms of the bill as originally introduced, persons related by blood or marriage were disqualified for appointment only "when" in the event of intestate death of the appointer, the appointee would "take by inheritance" from the person making such appoint-

ment. In the instant case it may be noted that under the terms of House Roll 260, as originally introduced, had the defendant been the father of a living child born in lawful wedlock at the time of appointing his sister, the validity of such appointment could not be questioned.

The situation was also properly reflected in the title of House Roll 260 by the employment of the words, "any person bearing certain relationship to the appointing officer," as employed therein. As thus used the word "certain" expressed a restriction upon the scope of the language employed, limiting its application to "one or some among possible others" (Webster's New International Dictionary), or to "a particular portion" (11 C. J. 74), of the relatives by blood and marriage. So, also, the effect of this title was to limit the exclusionary features of the proposed law to "some among possible others," to "a particular portion," of the relatives by blood and marriage, to segregate such and render the same ineligible to appointment. But neither the title nor the body of House Roll 260 contained any reference to penalties or any provision authorizing the recovery of moneys paid in violation thereof. In this connection it will be seen that the title of House Roll 260 was not only apt and appropriate, but, considering the body of the bill, was substantially conterminous with the legislative provisions therein contained. In the course of legislative procedure incident to its enactment, all of the words of House Roll 260 appearing after the title and the words "section 1" were by amendment stricken out and the present provisions of chapter 227, Laws 1919, substituted therefor, and was adopted and approved. The title, however, was not amended.

In the body of the act as finally passed, the class of ineligible relatives was increased from the limited few, who under existing circumstances "in the event of intestate death" of the appointer would "take by inheritance" from him, to "any person related by blood or marriage to the person * * * making said appointment: Provided, this

provision shall not apply in cases where such person appointed receives compensation of less than $800 per year." And section 2, ch. 227, Laws 1919, also in substance further provided that such prohibited appointment shall be void, and no person thus illegally appointed shall be paid from public money, and that "any person or persons so paying the same or any part thereof * * * shall be liable for all moneys so paid." Giving the words employed their literal meaning, the provision just referred to in effect made county treasurers liable for all payments made to unlawful appointees, whether such ineligible persons were appointed by themselves or others, and irrespective of their knowledge, intent or possibilities of information of the actual situation of the person to whom such payments were made.

It also may be said that the briefs afford us no comprehensive definition for the phrase "related by blood or marriage," as used in this statute. Nor is the limitation of the scope of the term here employed in any manner indicated by the authorities which are cited by the parties, nor are we able to find any satisfactory source of information on this subject in the books. Even if the Adamic theory of creation be not involved in the identification of those who in the terms of this statute are "related by blood or marriage," still practical difficulties are presented when we are met with the contention that this statutory provision is void for indefiniteness. It is possible, however, that this question need not be determined in the instant case.

Section 2 of the act under consideration provides for recovery of public funds paid in violation of its terms under conditions where right of recovery did not previously exist. Giving full effect to the language employed in the literal sense of the terms used, county, city, village and state treasurers were made responsible for all payments made by them to all ineligible persons under this act, irrespective as to who may have made such appoint-

ments or the guilty knowledge, or intent, or good faith, of the officers making such payments of public funds. So, too, these exactions were authorized by the terms of the statute without reference to value of services which the illegal payments were made to compensate, and without reference to the fact that actual damage may or may not have been suffered by the state or political subdivision involved. The liability by the terms of the statute was imposed on the delinquents solely because of the acts done. "A liability which is created by statute to follow as a consequence of the doing or omission of some act, and the extent of which is not measured or limited by the damage caused by the act or omission, is in the nature of a penalty and the statute penal in its character." *Kleckner v. Turk,* 45 Neb. 176. See *Bourne v. Baer,* 107 Neb. 255. So, whether the proscribed payment is to be made, as in this case, to his own appointee, or whether made by a treasurer to an unlawful appointee of another, the recovery, if sustained, must be deemed a recovery by a penalty.

So far as the second cause of action is concerned, the situation here presented may be summarized as follows: The statute controlling the second cause of action we find in a legislative enactment whose inhibitions are by its title limited to "one or some among possible others," or "a particular portion," of those related by blood or marriage to the appointee, but in the body of which, however, notwithstanding the limitations expressed in the title, these inhibitions are imposed on all who "are related by blood or marriage to the appointer," and they are rendered ineligible to appointment; also, wherein the title is wholly silent as to penalties and in no manner indicates their presence in the enactment, yet in the body thereof a penalty is expressly provided.

This court is committed to the view that "The title to a legislative act is a part thereof, and must clearly express the subject of legislation." *State v. Burlington & M. R. R. Co.,* 60 Neb. 741. See *State v. Tibbets,* 52 Neb.

228. It is quite apparent, therefore, that chapter 227, Laws 1919, approved April 9, 1919, was passed in contravention of section 14, art. III of the Constitution, which, among other requirements, provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The title of the act here controlling is plainly not comprehensive enough to authorize the penalty provisions of section 2 thereof, on which this second cause of action is based. We have repeatedly announced the rule: "Any provision in a legislative bill which is not clearly expressed in the title cannot be enacted into law." *Union P. R. Co. v. Sprague*, 69 Neb. 48. See *Ives v. Norris*, 13 Neb. 252; *Ex parte Thomason*, 16 Neb. 238; *Haverly v. State*, 63 Neb. 83. This appears applicable to the instant case, and we hold the provisions of section 84-812, Comp. St. 1929, void as enacted in contravention of section 14, art. III of the Nebraska Constitution.

It follows that the judgment of the trial court on the first cause of action is in all things correct, and is affirmed; but that the trial court erred in its finding and judgment against the defendant on the second cause of action. The judgment entered against the defendant on the second cause of action is therefore reversed and the cause of action dismissed.

AFFIRMED AS TO FIRST CAUSE OF ACTION, AND REVERSED AND DISMISSED AS TO SECOND CAUSE OF ACTION.